SARANAC LAND AND TIMBER COMPANY, Plaintiff, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Defendant, Actions 1 and 2.

(Supreme Court, Franklin Special and Trial Term, July, 1917.)

Evidence—newly discovered—new trial — ejectment — taxes — schools — trial — motions and orders.

Stipulation — motion to vacate, denied — new trial — actions — referees.

On a motion for a new trial on the ground of newly-discovered evidence, in an action of ejectment brought against the comptroller of the state which resulted on the third trial in a judgment in favor of plaintiff, it appeared that the principal question litigated was whether or not the land described in the complaint was within the boundaries of school district No. 2 in the town of Harrietstown, Franklin county, in 1869 and 1870, when certain school taxes were levied, for failure to pay which the lands in question were sold at a tax sale in 1877 and bid in by the comptroller of the state. On the last trial the referee to hear and determine found that when the school taxes of 1869 and 1870 were levied the land in question was outside said school district and defendant was unable to produce any direct evidence tending to show that before said taxes were

# 512 SARANAC LAND & TIMBER CO. v. ROBERTS.

levied the said school district had been enlarged by an order of the school commissioner of the county so as to include all of township 24 in Franklin county. There was some evidence tending to show that a town record book of Harrietstown had been lost, nobody claimed to know where it was or who had it or that it enlarged the said school district, and there was abundant evidence to show that in former years they had a very loose way of transacting business in the town clerk's office in Harrietstown and that most any one could go there and get a book of records without let or hindrance. The moving papers tended to establish that one T who had litigation with the state in which the title to a certain quarter of said township 24 was in controversy had in his possession in 1889 a town record book of said town of Harrietstown which contained an order made early in 1869 by the then school commissioner of Franklin county enlarging the boundaries of said school district so as to include the whole of township 24; that the original order was seen by T and two other persons; that the book and certain other papers were borrowed by T from the said town's clerk office and subsequently taken along with his other papers when he went to San Francisco in 1903; that thereafter said book, with books and papers regarded as of no value, was destroyed by T's wife and that a diligent but unsuccessful search had been made by both of them to find the missing record book and papers; that the new evidence had been discovered since the last trial and no one connected with the attorney-general's office had knowledge thereof at any of the previous trials and that since being informed, in January, 1917, of the existence of such evidence the attorney-general had exercised the utmost diligence in securing and making the present motion. *Held,* that as the alleged newly-discovered evidence if produced on another trial would be likely to change the result it would be manifest injustice not to permit defendant to have an opportunity to present it, and the motion will be granted.

Where a stipulation entered into in March 1904 in open court, wherein a jury trial was waived and the parties consented that the action be tried by a referee, contained no provision to the effect that if new trials were granted another referee should not be appointed, it was the duty of the court upon granting the new trial to appoint a new referee, and a motion to vacate the stipulation in so far as it provided for a reference will be denied.

MOTIONS by defendant for new trials.

Weeds, Smith & Conway (Thomas F. Conway and Frank E. Smith, of counsel), for plaintiff.

Merton E. Lewis, Attorney-General (Wilber W. Chambers, Deputy Attorney-General, of counsel), for defendant.

CLARK, J.   On the appearance of counsel for plaintiff in opposition to these motions for a new trial preliminary objections were made on behalf of plaintiff as to the authority of the extraordinary special and trial term which had been convened by the governor of the state to hear these motions, and practically the same objections were renewed at every subsequent hearing, and decision on said objections was reserved. Each of said objections is overruled with exceptions to plaintiff.

In 1895 plaintiff brought actions against the comptroller of the state of New York to recover lands described in the complaint, the actions being brought in the federal court and were in ejectment.   One of said actions was tried in 1896 and resulted in a decision in favor of the defendant and judgment entered on that decision was subsequently affirmed in the United States Supreme Court.   177 U. S. 318.

Plaintiff secured an order for a new trial on the payment of costs and the judgment was vacated, but the action has never been retried and both actions are still pending in the federal court.

Without further prosecuting the federal court actions, plaintiff brought the present actions in ejectment in the Supreme Court of the state of New York, and they involve the same causes of action and are between the same parties and concern the same lands as those referred to in the federal court actions, being

33

the west half of the northeast quarter of township 24 in Franklin county and the whole of the northwest quarter of said township 24.

In 1904 when the actions were about to be moved for trial and in March of that year a stipulation was made in open court whereby the parties waived a jury and consented to try them before a referee. Three trials have been had and the litigation has been twice to the Court of Appeals, the judgment that was rendered in favor of plaintiff on the second trial being reversed for errors in the admission of evidence. *Saranac Land & Timber Co.* v. *Roberts,* 208 N. Y. 288.

In November, 1913, another referee was appointed in both actions, to hear, try and determine the same; both actions were tried and resulted in judgments in favor of the plaintiff which were entered in February, 1917.

The principal question of fact litigated on the last trial related to the boundaries of school district No. 2 in the town of Harrietstown, Franklin county, the point in dispute between the parties being the question of whether or not the property described in the complaint was within the boundaries of school district No. 2 of the town of Harrietstown in said county in 1869 and 1870 when certain school taxes were levied, and for the failure to pay which taxes the lands in question were sold at a tax sale in 1877 and bid in by the comptroller of the state of New York.

The plaintiff claims, and the referee found at the last trial, that when the school taxes of 1869 and 1870 were levied the land in question was outside of said district No. 2 Harrietstown and it is the contention of defendant that before said taxes were levied school district No. 2 had been enlarged by an order of the school commissioner of said county so as to include all of township 24 in Franklin county.

At the last trial, while defendant claimed that said district had been enlarged so as to include all of township 24, he was unable to produce any direct evidence to that effect, and, while it was urged that the facts as established on said trial would have justified the inference that an order enlarging said district had been made early in 1869, the evidence to sustain such a finding was by no means conclusive.

Defendant here asks for a new trial on the ground of newly discovered evidence claiming that in February, 1889, about the time one Benton Turner had litigation with the state in which the title to the southeast quarter of township 24 was in controversy, and while making preparations for the trial of that case, he, in company with the lawyers, George H. Beckwith and Henry E. Barnard, went to the town clerk's office in said town to investigate and find if possible evidence to be used in said litigation. Mr. Turner made an affidavit read on this motion to the effect that at that time he found in the town clerk's office an order made early in 1869, signed by one Bates, a former school commissioner, enlarging school district No. 2 so as to take in the whole of township 24; that he procured certified copies of the order from the town clerk and that he borrowed a town record book in which said order was recorded and took them away with him.

There is abundant evidence to show that in former years they had a very loose way of transacting business in the town clerk's office in Harrietstown and most anybody who wanted to could go there and get a book or record without let or hindrance. This loose method of transacting business in that town clerk's office is perhaps the principal reason why this protracted and expensive litigation still continues.

Messrs. Beckwith and Barnard have made affidavits, part of the moving papers, in which they corroborate

Mr. Turner in regard to the visit to the town clerk's office in February, 1889, the finding of an order signed by the school commissioner of Franklin county enlarging school district No. 2 by taking in the whole of township 24, that the order was recorded in the town record book, and that they never disclosed these facts to any person representing the state until they told the same to the deputy attorney-general having charge of these cases in January, 1917.

The moving papers further show that Mr. Turner borrowed said record book from the town clerk's office, together with other papers and records which belonged there, and that he took them to his home in Plattsburg and had them in his possession until 1903, when he moved to San Francisco; that he took said book and papers with him, including a certified copy of said order which he had obtained from the town clerk's office in Harrietstown, and that subsequently while in San Francisco Mrs. Turner caused many books and papers which her husband had taken with him when he went west, and which she regarded as of no value, to be destroyed.

Plaintiff vigorously attacks the statements contained in the affidavits of Messrs. Turner, Beckwith and Barard, urging that most of the statements in Mr. Turner's affidavit are false, and that Messrs. Beckwith and Barnard are mistaken. Many of the affidavits read by plaintiff, whereby it is sought to impeach the credibility of Benton Turner as a witness, were made by men who appear to have had more or less trouble with him and they are probably not his friends.

Defendant has read replying affidavits made by some of the most reputable citizens of Clinton county, including the present county judge, the sheriff of the county and a former surrogate, men who have known Mr. Turner for years, and they testify in substance

that for many years he was one of the most honorable
citizens of Clinton county, holding positions of trust in
the community, conducting an extensive business in
Plattsburg, and that his reputation for truth and
veracity is good. It is sufficient to say that the effort
to discredit Benton Turner as a witness has not been
successful.

Plaintiff also attacks the statements made by Messrs.
Beckwith and Barnard in their affidavits and oral
testimony, and, while conceding that they are reputable
gentlemen and lawyers of high standing, it is still
urged that their statements should be given little, if
any, consideration because of the fact that they are
both aged men and the frailties of memory make their
statements unreliable. While the age of these gentle-
men has been given due consideration in weighing their
testimony the fact must not be overlooked that many
times aged persons remember with the greatest clear-
ness transactions of many years ago where perchance
their recollection of recent events would be somewhat
cloudy. Messrs. Beckwith and Barnard went to the
town clerk's office in Harrietstown with Benton Tur-
ner at a time when they had in charge an important
litigation for him in which they were his counsel, and
they went there to obtain evidence to be used on that
trial. Their reason for being there with him was a
legitimate one and there is every reason to believe that
what they discovered at that time would be impressed
on their minds, and the fact that twenty-eight years
have elapsed since that visit to the clerk's office does
not necessarily prove that the intervening years have
clouded their recollection as to the transactions of that
day. On the contrary it may well be said that men of
their intelligence, in view of the character of their
errand at the town clerk's office, would have indelibly

fixed in their minds the events connected with that transaction which years could not eradicate.

Now, if what these gentlemen say in the moving papers with reference to finding an order in the town clerk's office made in the early part of the year 1869, enlarging school district No. 2 in said town so as to take in the entire township 24 is true, it is material evidence of the greatest importance in this litigation, for if the district were enlarged so as to take in the whole of said township prior to the levying of the school taxes in 1869 and 1870, then it would seem that defendant is absolutely right in his contention here.

On the other hand if such an order were not made prior to the time of the levying of said taxes then plaintiff would be right in its contention. So it is of the utmost importance to have the fact established once and for all as to whether or not in the early part of the year 1869 an order enlarging the district so as to take in the whole of township 24 was made as claimed by defendant.

After these motions were made Messrs. Benton Turner, George H. Beckwith and Henry E. Barnard were orally examined before a referee and a transcript of their testimony has been furnished this court. On the hearings before said referee when these witnesses were orally examined, plaintiff made many objections which the referee was powerless to pass upon and which plaintiff urges should be disposed of at this time, it being claimed that many of the questions asked by the attorney-general were leading and suggestive, and that the answers of the witnesses did not state facts, but were mere conclusions of the witnesses and that their testimony was incompetent and should be excluded.

On the second hearing of these motions which was held in the city of Schenectady, March 31, 1917, plain-

tiff through its counsel asked for an adjournment of the proceedings pending an appeal to the Court of Appeals in a proceeding wherein plaintiff sought to prohibit this court from hearing these motions, on the ground that the extraordinary trial and special term had been improperly convened by the governor.

The learned attorney-general vigorously opposed that application, urging among other things that the newly discovered evidence would be furnished by two very aged witnesses and by Mr. Turner who was a nonresident of the state, and that the matter should proceed without delay in order that he might have the benefit of the testimony of these witnesses in case the motions for new trials should be granted.

Counsel for plaintiff thereupon stated, in substance, in open court that if a postponement of the hearing of these motions were granted he would stipulate to have these witnesses examined orally before a referee and that if new trials were granted the testimony of said witnesses thus taken could be used by the attorney-general at such trials.

The primary purpose of examining these witnesses orally was to perpetuate their testimony so the attorney-general could use it on new trials if they were granted.   Under these circumstances it would seem that the questions objected to by plaintiff at the hearings when the testimony of these witnesses was taken, and the degree of credence to be given to such testimony, should be passed upon by the tribunal before whom new trials, if any, are had and not be disposed of on these motions.  *Peyser* v. *Coney Island & B. R. R. Co.,* 81 Hun, 70.

The moving papers tend to establish that Benton Turner had in his possession in 1889 a town record book of the town of Harrietstown, Franklin county, and that said book contained an order made in the

early part of the year 1869 by the school commissioner of Franklin county, enlarging the boundaries of school district No. 2 of Harrietstown so as to include the whole of township 24; that such an order was made and the original order was seen by the three witnesses, Turner, Beckwith and Barnard; that the book and certain other papers were taken by Benton Turner from the town clerk's office of Harrietstown and subsequently taken along with his other property when he went west in 1903; that subsequently Mrs. Turner caused many books and papers which her husband had taken with him to San Francisco, and which she regarded as of no value, to be destroyed, and that diligent search has been made by Mr. and Mrs. Turner to find the missing record book and papers, but without success; that this new evidence has been discovered since the last trial and that nobody connected with the attorney-general's office had knowledge of it at the time of any of the previous trials, and that since being informed of the existence of such evidence the attorney-general has exercised the utmost diligence in securing it and making this application for new trials.

The learned counsel for plaintiff cites a large number of cases to sustain its contention that new trials should not be granted, but I do not understand that there is any hard and fast rule of law governing motions of this character. Each case must be considered on its own merits, and if the newly discovered evidence is material and of sufficient cogency so that it would be likely to change the result if new trials were granted, and has come to the knowledge of the moving party since the trial and he has been diligent in moving for a new trial, it should be ordered; otherwise not. 2 Rumsey Pr. 411.

Although there was some evidence at the last trial that a town record book of Harrietstown had been lost,

nobody claimed to know where it was or who had it or that it enlarged the school district in question. The newly discovered evidence is not primarily the lost record book which Benton Turner borrowed from the town clerk's office and never returned, but it is the contents which are important. The fact that Mr. Turner borrowed a record book from the town clerk's office about the time he had a litigation with the state as heretofore stated, that it contained the order made in the early part of 1869 enlarging school district No. 2 so as to include all of township 24, and the fact that the book has been lost and after diligent search cannot be found, and that nobody connected with the defense had any knowledge of these facts until after the last trial, are satisfactorily established by the moving papers herein.

I regard this evidence as material, competent and not cumulative. It is not cumulative because it is not the same kind of evidence on the same point as any evidence produced on former trials, there never having been any positive evidence of the making of the order early in 1869 enlarging the school district as claimed by the defendant. Moreover, the rule which formerly obtained with reference to cumulative evidence is not now followed strictly in motions for new trials on the ground of newly discovered evidence, the question being not so much whether the newly discovered evidence is cumulative, as the question whether or not it is of such character that it would be likely to produce a different result on a new trial. *Markert* v. *Long Island R. R. Co.,* 175 App. Div. 467.

Mr. Bell, a witness examined in behalf of the plaintiff in opposition to those motions, testified in substance that at one time he had a conference with Governor Hughes and the attorney-general and other state officials in which the fact that there was a lost record

book was mentioned, but in that conference Mr. Bell distinctly told them that he had been unable to locate the book and could not find it and had no knowledge who had it or where it could be found. There was not enough in that conversation to charge the attorney-general's office with negligence in failing to make an earlier effort to find this book. It was a vague state-ment that there was a missing book but where it was, or who had it, or where it could be found, Mr. Bell did not undertake to say for he did not know, and this evidence could not have been obtained upon a former trial by the exercise of reasonable diligence. The fact is that since the attorney-general had knowledge of this missing record book, and of the fact that it con-tained this order enlarging school district No. 2 so as to take in the whole of township 24 in Franklin county, he proceeded diligently in an effort to find it and the order itself and cannot be charged with any lack of diligence or laches in the premises. This newly dis-covered evidence is of the very essence of this whole controversy and it ought to be settled once and for all whether the lands in question were included within school district No. 2, Harrietstown, at the time the school taxes of 1869 and 1870 were levied. This evi-dence is of such importance and cogency that if it can be produced on another trial it would quite likely change the result. It is the duty of the court on this application to carefully scrutinize this evidence, and that has been done, and it has impressed me as being so important that it would be a manifest injustice not to permit defendant to have an opportunity to present it at another trial.

These motions for new trials must therefore be granted.

Defendant not only asks for new trials, but asks that the stipulation entered into March 15, 1904, where-

in jury trials were waived and the parties consented that the actions be tried by a referee, be vacated in so far as it provides for trials before a referee. This cannot be done. The provisions waiving a jury and for a reference were embodied in one instrument and were parts of the same transaction. It amounted to a contract between the parties that juries be waived and trials be had before a referee. It would be a manifest injustice to relieve one party from the terms of the stipulation and enforce it against the other party, and the stipulation must stand or else be set aside *in toto*.

It is urged by plaintiff that if new trials were granted and the stipulation is not set aside the causes would stand referred to the referee heretofore appointed, and cites the case of *Klein* v. *Continental Ins. Co.*, 62 Hun, 341, in support of that contention.

The stipulation in question was made in open court and provided that jury trials should be waived and the parties consented that the actions be tried by a referee to be selected by the court. There was no provision in the stipulation to the effect that if new trials were granted another referee should not be appointed, and under these circumstances when new trials are granted it is the duty of the court to appoint another referee, the stipulation not having expressly provided otherwise. Code Civ. Pro., § 1011; *Buffalo Cold Storage Co.* v. *Bacon,* 136 App. Div. 263; *Butterly* v. *Deering,* 158 id. 181; *Carney* v. *Penn. Realty Co.,* 174 id. 86.

It having been determined that justice requires that these motions be granted on the ground of newly discovered evidence, and that the stipulation for a reference should not be vacated but that the new trials should be had before another referee, the only remain-

ing question to be considered is as to the terms upon which these motions should be granted.

There is some ground for belief that this lost record book containing the order, which defendant contends was made in the early part of the year 1869, enlarging school district No. 2, had been seen by and was in the possession of Martin V. B. Turner, a stockholder of the plaintiff, long before anybody connected with the defense had knowledge that any such book ever existed, for Mr. Frank L. Bell testified that when he was at the clerk's office in the town of Harrietstown in 1909 he was there informed that a town record book which he could not find was in the possession of said Martin V. B. Turner and that information was given him by the town clerk at Saranac Lake.

There is also evidence by Mr. Bell that another stockholder of plaintiff, Mr. P. J. Marsh, had some of the books and records of the town clerk's office in his possession at one time, and there is much in the record to justify the claim of the attorney-general that stockholders of the plaintiff corporation had knowledge of this lost record book and of the order enlarging school district No. 2, before the last trial and that such knowledge was withheld from the referee and those connected with the defense, and thus the case was disposed of on a false issue, without the learned referee having before him any evidence whatever with reference to this particular lost town record book or the order enlarging school district No. 2, made as defendant claims before the school taxes in question were levied.

The fact that such evidence was not produced was certainly no fault of the defendant and it was the duty of any stockholder of the plaintiff who had possession of said town record book to place such information before the referee, to the end that his decision might

not be made upon a false issue. The fact that these stockholders had had possession of a lost town record book of Harrietstown appears to have been withheld at the last trial, and the defendant should not be penalized by the imposition of a large bill of costs as a condition of presenting at another trial this newly discovered evidence, which was very probably known to some of the stockholders of the plaintiff before the last trial, and before anybody connected with the defense had knowledge of it.

Motions for new trials granted, with costs to abide the event, and these cases having been heretofore referred by stipulation the new trials must be had before a referee and they are referred to the Honorable Arthur E. Sutherland, counselor at law, of Rochester, as referee, to hear, try and determine.

Ordered accordingly.